19-3068-cv
Thor Halvorssen v. Glenn R. Simpson, et al.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of March, two thousand twenty.

PRESENT:
        REENA RAGGI,
        DENNY CHIN,
        RICHARD J. SULLIVAN,
            *Circuit Judges.*
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

THOR HALVORSSEN,
        *Plaintiff-Appellant*,

        -v-                             19-3068-cv

GLENN R. SIMPSON, PETER FRITSCH, and
FRANCISCO D'AGOSTINO-CASADO,
        *Defendants-Appellees*,

MANDATE

MANDATE ISSUED ON 05/15/2020

LEOPOLDO A. BETANCOURT-LOPEZ,
PEDRO JOSE TREBBAU-LOPEZ, FRANCISCO
CONVIT-GURUCEAGA,
                *Defendants.*\*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

| | |
|---|---|
| FOR PLAINTIFF-APPELLANT: | HOWARD W. FOSTER, Foster PC, Chicago, Illinois. |
| FOR DEFENDANTS-APPELLEES: | JOSHUA A. LEVY (Rachel Clattenburg, *on the brief*), Cunningham Levy Muse LLP, Washington, D.C., *for* Glenn R. Simpson and Peter Fritsch. |
| | GARY J. MALONE (Robert L. Begleiter, *on the brief*), Constantine Cannon LLP, New York, New York, *for* Francisco D'Agostino-Casado. |

Appeal from the United States District Court for the Eastern District of New York (Eric N. Vitaliano, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Thor Halvorssen appeals from the district court's judgment, entered August 28, 2019, dismissing his complaint against defendants-appellees Glenn R. Simpson, Peter Fritsch, Francisco D'Agostino-Casado, and defendants Leopoldo A. Betancourt-Lopez, Pedro Jose Trebbau-Lopez, and Francisco

---

\*      The Clerk of the Court is respectfully directed to amend the official caption to conform to the above.

Convit-Guruceaga ("defendants") for violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*. Halvorssen alleged that Fusion GPS ("Fusion"), whose principals are Simpson and Fritsch, conspired with others to create and disseminate dossiers of false and damaging information about Halvorssen and two other individuals. By memorandum and order entered August 26, 2019, the district court granted motions filed by D'Agostino-Casado and by Simpson and Fritsch to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

## BACKGROUND

The facts alleged in the complaint are assumed to be true for purposes of this appeal. Halvorssen is the President of the Human Rights Foundation (the "Foundation") and a critic of corruption in Venezuela. D'Agostino-Casado, Betancourt-Lopez, Trebbau-Lopez, and Convit-Guruceaga (the "Venezuelan defendants") owned Derwick Associates ("Derwick"), a Venezuelan energy company that purportedly engaged in kickback schemes and overbilling in Venezuela. In July 2015, Halvorssen became a shareholder of Harvest Natural Resources, Inc. ("Harvest"), a Texas-based energy company with business interests in Venezuela, and one month later he sent a letter to the Harvest board expressing concerns about the board's nomination of D'Agostino-Casado to a board seat. The letter accused the Venezuelan defendants of

3

violating federal laws in connection with Derwick, including the Foreign Corrupt Practices Act , 15 U.S.C. §§ 78dd-1 *et seq.*, and money laundering statutes, and was copied to various federal law enforcement officials.

In retaliation for the letter, in August 2015, the Venezuelan defendants engaged Fusion to produce a dossier accusing Halvorssen of engaging in unsavory and illegal activities and to publicize the dossier through a media campaign to discredit Halvorssen and pressure the Foundation to dismiss him. Fusion gave the dossier to Washington, D.C. journalist Kenneth M. Silverstein, who agreed to use the dossier to write a "hit piece" about Halvorssen, which first appeared on the internet on September 28, 2015. App'x at 32. Between September 24, 2015 and October 2, 2015, Silverstein, with the approval of Simpson and Fritsch, posted unflattering statements about Halvorssen on Facebook. Simpson and Fritsch also engaged in search engine optimization to ensure that Silverstein's story appeared on the first page of any internet search for Halvorssen or the Foundation, though the complaint does not indicate when this occurred. After a two-year hiatus, Silverstein again attacked Halvorssen, publishing a blog post on October 26, 2017 accusing him of lying in testimony before the U.S. Senate.

Halvorssen contended that he was not the only target of Fusion. Two other individuals, William Browder and Aleksander Boyd, are also alleged to have been targeted by Fusion. Browder is the principal of Hermitage Capital Management,

4

which for many years was the largest foreign investor in Russia. Halvorssen alleged that Fusion was hired by a company with ties to the Russian government to, *inter alia*, compile a dossier of damaging information about him in retaliation for drawing attention to corruption in Russia, and that Fusion disseminated that information to journalists between 2015 and 2016. Boyd is a journalist who reports on corruption in Venezuela, including Derwick's purported kickback schemes. Halvorssen alleged that in 2014 the Venezuelan defendants hired Fusion to produce a dossier that could be used to smear Boyd in retaliation for his reporting on Derwick.[1] As part of this retaliation campaign, persons burglarized Boyd's home on November 17, 2014.

Halvorssen alleged that these three schemes to disparage Boyd, Halvorssen, and Browder constituted a pattern of racketeering activity in violation of RICO. The conspiracy purportedly began in 2014, when Fusion compiled a dossier on Boyd and burglarized his home, continued in 2015 when Fusion compiled dossiers on Halvorssen and Browder and disseminated them, extended into 2016 as Fusion continued to disseminate damaging information about Browder, and culminated with a blog post by Silverstein critical of Halvorssen and Browder on October 26, 2017.

---

[1] Although Halvorssen alleged that Boyd was the subject of false and sensational blog posts, he does not indicate when the posts were made.

In its memorandum and order dismissing the complaint, the district court held that Halvorssen failed to sufficiently allege a pattern of RICO activity. This appeal followed.

## DISCUSSION

**A.   Standard of Review**

"We review *de novo* a grant of a motion to dismiss under Rule 12(b)(6), accepting as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in plaintiffs' favor." *Burgis v. N.Y.C. Dep't of Sanitation*, 798 F.3d 63, 68 (2d Cir. 2015). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

**B.   Applicable Law**

To state a claim under RICO, 18 U.S.C. § 1962(c), a plaintiff must allege "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains [an] interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Williams v. Affinion Grp., LLC,* 889 F.3d 116, 123-24 (2d Cir. 2018) (quoting *Moss v. Morgan Stanley, Inc.* 719 F.2d 5, 17 (2d Cir. 1983)). To state a

6

RICO conspiracy, a plaintiff must allege the existence of an agreement to violate RICO's substantive provisions. *Id.* at 124.

The requirement that the plaintiff establish a pattern of racketeering activity is intended to prevent the application of RICO to "isolated or sporadic" criminal acts. *United States v. Indelicato*, 865 F.2d 1370, 1383 (2d Cir. 1989). To establish a pattern, a plaintiff must identify at least two predicate acts and show that (1) the acts are related both to each other (horizontal relatedness) and to the enterprise (vertical relatedness) and (2) the conduct continued over a substantial period of time. *See Reich v. Lopez*, 858 F.3d 55, 60-61 (2d Cir. 2017).

As to vertical relatedness, the plaintiff must plausibly allege "that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise." *United States v. Burden*, 600 F.3d 204, 216 (2d Cir. 2010). Horizontal relatedness requires that the predicate acts "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Reich*, 858 F.3d at 61 (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)). Where the enterprise at issue is primarily a legitimate business, horizontal relatedness

7

cannot be established "simply by linking each act to the enterprise," but rather there must be a relationship "between the predicate crimes themselves."  *Id.*

As to continuity, a plaintiff may allege either an open- or close-ended pattern of racketeering activity.  *See id.* at 60.  Here, Halvorssen alleged closed-ended continuity, which involves predicate acts extending over a requisite minimum period of time with no threat of future repetition.  *See Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997).  We generally require that conduct extend for a minimum of two years.  *See Reich*, 858 F.3d at 60; *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) ("Although we have not viewed two years as a bright-line requirement, it will be rare that conduct persisting for a shorter period of time establishes closed-ended continuity, particularly where . . . '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'").

## C.    Application

Here, even assuming that Halvorssen plausibly pleaded two or more RICO predicate acts, we agree with the district court that he failed to plausibly allege a pattern of racketeering activity.  We consider two issues: first, whether the Browder scheme is related to the Halvorssen and Boyd schemes, and second, whether the 2017 Silverstein article is related to the alleged enterprise.

8

First, we conclude that Halvorssen failed to plausibly allege horizontal relatedness between the Browder scheme and the schemes against him and Boyd. Halvorssen alleges that the schemes were similar because all involved efforts by Fusion to retaliate against whistleblowers. The mere fact that Fusion was allegedly involved in all three schemes, however, does not mean that the schemes were horizontally related within the meaning of RICO. *See Reich*, 858 F.3d at 61. The Venezuelan defendants were not alleged to have participated in the Browder scheme and, unlike the Halvorssen and Boyd schemes, the Browder scheme did not involve the publication of false allegations. Where, as here, the enterprise is not primarily in the business of racketeering, the mere fact of overlapping participants is insufficient to establish horizontal relatedness. *See id.* at 62. Accordingly, the district court correctly excluded the Browder scheme from the analysis.

Second, we conclude that Halvorssen failed to plausibly allege vertical relatedness between the alleged enterprise and the 2017 Silverstein blog post. Halvorssen pleads no facts plausibly connecting the 2017 blog post to defendants, Fusion, the alleged enterprise, or the alleged conspiracy. Indeed, Halvorssen does not allege that the content of the 2017 blog post was related to the information contained in the 2015 dossier, and he alleged only that when Silverstein received the dossier in 2015, he agreed to "turn the dossier into a devastating profile of Halvorssen and publish it online." App'x at 22. That profile was published in 2015, whereas the blog post

9

referencing Halvorssen's 2017 testimony to the Senate Judiciary Committee was not posted until 2017. Accordingly, the 2017 blog post does not meet the vertical relatedness requirement, and the district court properly excluded it from the analysis. *See Burden*, 600 F.3d at 216.

With the Browder scheme and 2017 blog post excluded, and no predicate acts alleged after the October 2, 2015 Facebook post, we conclude that Halvorssen failed to establish closed-ended continuity.[2] At most, the complaint alleged predicate acts spanning eleven months beginning with the November 17, 2014 burglary of Boyd's home and continuing through Silverstein's October 2, 2015 Facebook post critical of Halvorssen. This eleven-month period falls far short of the two years we have generally found constitutes the minimum amount of time necessary to establish closed-ended continuity. *See Reich*, 858 F.3d at 60; *see also Spool*, 520 F.3d at 184. Accordingly, we conclude that Halvorssen failed to allege a pattern of racketeering activity, and that the district court did not err in granting defendants' motions to dismiss.[3]

* * *

---

[2] Halvorssen does not identify any violations committed against him between Silverstein's October 2, 2015 Facebook post and the October 26, 2017 blog post.

[3] Defendants raise additional grounds for affirming the district court. In light of our ruling on the issue of a pattern of racketeering activity, we do not reach them.

We have considered Halvorssen's remaining arguments and conclude they are without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

>FOR THE COURT:
>Catherine O'Hagan Wolfe, Clerk of Court

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit